FILED
2026 Sep-14 AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM D. ELMORE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 7:25-cv-01327-JHE |

## MEMORANDUM OPINION[1]

Plaintiff William D. Elmore ("Elmore") seeks review, pursuant to 42 U.S.C. § 405(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). Elmore timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On August 30, 2022, Elmore protectively filed an application for a period of disability and DIB, alleging disability beginning August 1, 2022. (Tr. 10, 185–91). The Commissioner denied Elmore's claim on March 20, 2023, and denied it again upon reconsideration on September 23,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 19).

2023. (Tr. 10, 83–92, 94–97). Elmore timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 98–99). Following a telephonic hearing on May 15, 2024, the ALJ entered an unfavorable decision denying Elmore's application for benefits in a decision dated August 21, 2024. (Tr. 10–21). Elmore sought review by the Appeals Council, but it denied his request for review on June 10, 2025. (Tr. 1–6). On that date, the ALJ's decision became the final decision of the Commissioner. On August 14, 2025, Elmore initiated this action. (Doc. 1).

Elmore was 51 years old on his alleged onset date. (Tr. 20). Elmore has past relevant work as a municipal maintenance worker. (Tr. 19–20).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity

[2] In general, the legal standards applied are the same whether a claimant seeks Supplemental Security Income ("SSI") or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

**III. Statutory and Regulatory Framework**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(3) whether the claimant's impairment meets or equals an impairment listed by the Social Security Administration ("SSA");

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (cleaned up).

**IV. Findings of the Administrative Law Judge**

After consideration of the entire record and application of the five-step evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Elmore had not engaged in substantial gainful activity since his alleged onset date. (Tr. 12). At Step Two, the ALJ found that Elmore has the following severe impairments: status post right shoulder repair and replacement; status post left shoulder repair; degenerative disc disease of the cervical spine; bilateral carpal tunnel syndrome; unspecified osteoarthritis; and obesity. (*Id.*). At Step Three, the ALJ found that Elmore does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14).

Before proceeding to Step Four, the ALJ determined Elmore's residual functional capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Elmore has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he should avoid ladders, ropes, scaffolds, unprotected heights, and hazardous machines. He can occasionally crawl. He can have occasional exposure to extreme temperatures and vibration. He cannot reach overhead on the right. He can frequently handle and reach from waist to shoulder on the right.

(Tr. 15).

At Step Four, the ALJ found, relying in part on hearing testimony from a vocational expert, that Elmore is unable to perform his past relevant work. (Tr. 19–20). At Step Five, the ALJ found that, considering Elmore's age, education, work experience, and RFC, Elmore is able to perform jobs that exist in significant numbers in the national economy. (Tr. 20–21). Therefore, the ALJ determined Elmore has not been under a disability from August 1, 2022 through the date of the decision. (Tr. 21). Thus, the ALJ denied his claim. (*Id.*).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Elmore contends that two errors require reversal and remand. First, Elmore argues that the ALJ improperly failed to credit his subjective testimony concerning his pain and other symptoms. (Doc. 15 at 7–11). Second, Elmore contends that the ALJ failed to properly analyze the opinions of two treating sources: Dr. Sunil Chandra, M.D., and Joann Bundrum, CRNP. (*Id.* at 11–15). Each argument is discussed separately below.

**A. The ALJ Properly Analyzed Elmore's Pain Testimony**

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still evaluate the intensity, persistence, and limiting effects of the claimant's symptoms in light of the record. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). Any finding that a claimant's statements about the intensity, persistence, or limiting effects of symptoms are inconsistent with the record must be supported by explicit and adequate reasons and substantial evidence. *See Holt*, 921 F.2d at 1223; *Foote*, 67 F.3d at 1561–62; *Malak v. Comm'r of Soc. Sec.*, 131 F.4th 1280, 1287 (11th Cir. 2025). A clearly articulated evaluation of subjective symptoms will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029 at *3–10. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3)–(4); SSR 16-3p, 2016 WL 1119029 at *3–10.

Consistent with SSR 16-3p, the ALJ evaluates a claimant's symptoms by examining their consistency with the objective medical evidence and other evidence of record. If an ALJ finds inconsistent a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). If that evaluation is inadequately explained, remand for further consideration may be required. *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Here, Elmore testified that he had been unable to recover from the most recent of multiple surgeries on his shoulders. (Tr. 16, 38–39). Unlike previous surgeries, Elmore testified that this round of surgery had caused him to become weaker on his right side, with little strength in his hands and constant pain. (Tr. 16, 39). Because of the pain in his shoulder, Elmore said that he was forced to leave his previous job; he used heating pads to relieve the pain in his shoulders. (*Id.*). He also testified that he experienced carpal tunnel and numbness in his hands. (Tr. 16. 39–40). Elmore stated that he could help with household chores but needed multiple breaks to sit down or stand up. (Tr. 16, 39, 42). Elmore also completed function reports indicating that he had limitations in lifting, squatting, reaching, sitting, and using his hands, as well as problems with personal care and hygiene. (Tr. 16, 226, 230, 245, 249).

Considering this, the ALJ recited the correct legal standard. He found that Elmore's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 16). However, he also found that Elmore's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record . . . ." (*Id.*). Specifically, the ALJ characterized Elmore's "statements about the intensity, persistence, and limiting effects of his symptoms" as "inconsistent because the treatment notes do not show the serious symptoms and dysfunction that would be expected were the claimant as limited as alleged."[4] (*Id.*).

The ALJ discussed that evidence at length. First, he noted records from orthopedic surgeon Dr. Donald Scott, who performed a right shoulder reverse arthroplasty on January 20, 2021. (Tr. 16, 420–32). At a May 2021 follow-up visit, Elmore reported 7/10 pain with continued burning, tingling pain and weakness in his arm. (Tr. 424). Still, Dr. Scott found that Elmore had a "much improved" range of motion, with "full range of motion actively at times." (Tr. 425). Elmore rated 5/5 on strength testing in all muscle groups, with normal deep tendon reflexes and normal results on drop arm, cross arm, impingement, Yergason's, Speed's, and O'Brien's tests. (*Id.*). Dr. Scott noted that "the remainder of the extremity exam is unremarkable." (*Id.*). Based on these results, Dr. Scott believed Elmore was "at MMI[5] from his shoulder injury and surgery." (*Id.*).

The ALJ also pointed to two functional capacity evaluations ("FCE") performed at Dr. Scott's request in May and June 2021. (Tr. 16, 456–87). On May 25, 2021, physical therapist John Cormier evaluated Elmore. (Tr. 480–87). Cormier found that Elmore "did not demonstrate the abilities to perform the essential job functions of his position as an equipment operator with the City of Tuscaloosa," which required the capacity to perform heavy work. (Tr. 480). Rather,

---

[4] Elmore takes issue with this formulation, stating that "it is improper for an ALJ to develop his own indicia for measuring pain, such as drawn features, weight loss, and muscle atrophy." (Doc. 15 at 9) (citing *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987)). But the ALJ did not point to the absence of any such evidence, here or elsewhere; this is effectively just the ALJ restating that Elmore's testimony was not consistent with the medical evidence.

[5] Maximum medical improvement.

Cormier stated that Elmore had various limitations correlating with "a light category of job demands with restrictions of no more than occasional overhead reaching with the right upper extremity," which "may indeed be [Elmore's] true maximal functional capacity" but was called into question due to "inconsistencies on the validity indicators and [Elmore's] self-limiting behaviors." (*Id.*). The results of this FCE were deemed invalid and another FCE was rescheduled. (Tr. 478, 480). The second FCE was performed by physical therapist Brooke Owens on June 30, 2021. (Tr. 457–68). Again, this FCE was invalidateded due to Elmore's self-limiting behavior on 38% of the 21 tasks he was asked to perform. (Tr. 457). Still, the minimal level of work described was within the light range, and Owens found that Elmore had only a 7% whole person impairment. (Tr. 457, 469). Dr. Scott agreed with the impairment rating in a handwritten note on July 8, 2021, finding that Elmore was 7% impaired and at MMI and releasing Elmore to "fully duty – no restrictions." (Tr. 469).

Next, the ALJ discussed Elmore's physical therapy for cervical pain, undertaken from March 2021 through December 2021. (Tr. 17, 617–51). Notes by therapist Johanna Armstrong from the last of Elmore's six physical therapy visits indicated that some, but not all, of Elmore's therapy goals had been met. Specifically, Elmore met his goals of being independent with a home exercise program; some decrease in neck, back, and right shoulder pain; and having an improved score on the FOTO neck index. (Tr. 650–51). Elmore partially met his goal of having a 40% decrease in neck, upper back, and right shoulder pains: rather than a 40% reduction, Elmore reported a 25% reduction. (*Id.*). Elmore failed to meet his goals of decrease in disturbed sleep; and increased tolerances for using his right upper extremity for functional activities at waist level. (*Id.*). Armstrong characterized Elmore as having "no significant increase for functional activities

at this time." (Tr. 650). Elmore ended his physical therapy because he had no further worker's compensation approved visits remaining. (*Id.*).

In addition to the records above, both sets of which predate Elmore's August 1, 2022, alleged onset date, the ALJ discussed evidence postdating the onset date. One piece of such evidence was Elmore's primary care treatment records with Dr. Chandra and CRNP Bundrum at Curewell Medical Center, reflecting multiple examinations from January 2022 to May 2024. (Tr. 17, 674–96, 761–81, 785). The ALJ noted that Dr. Chandra diagnosed Elmore with carpal tunnel syndrome but characterized the remainder of these records as "[e]ssentially all . . . unremarkable." (Tr. 17).

Finally, the ALJ noted a March 2023 evaluation by consultative examiner Mohammad Fawad Aryanpure, MD. (Tr. 17, 758–60). At this evaluation, Elmore reported a history of left shoulder pain after surgery, pain in his right shoulders after two surgeries including a total replacement in 2021, carpal tunnel, right leg pains due to sciatic nerve damage, diabetes, hypertension, and "no other [reported] issues." (Tr. 758). Dr. Aryanpure performed a general examination which the ALJ described as "unremarkable." (Tr. 17). Dr. Aryanpure found that Elmore's gait was normal and measured Elmore's hand grip strength at 5/5 on the left and +4/5 on the right. (Tr. 759). The ALJ found "[m]ore notable" Dr. Aryanpure's findings that Elmore had range of motion within normal limits in his cervical spine, dorsolumbar spine, hip, knee, and ankle. (Tr. 17, 759).

Elmore argues that "the only specific medical records" the ALJ focused on were the records of Dr. Scott, which he claims was erroneous because Dr. Scott assessed Elmore more than a year before the alleged onset of Elmore's disability and because Dr. Scott explicitly declined to address the issue of Elmore's neck pain. (Doc. 15 at 9–10). Although Elmore contends that the ALJ

"focus[ed] his analysis of Mr. Elmore's testimony exclusively on the records of Dr. Scott and the treatment he ordered" (doc. 15 at 10), this argument misses the mark; the ALJ specifically discussed other medical records, as noted above and discussed further below. Additionally, neither of the issues Elmore identifies undermines the ALJ's discussion of Dr. Scott's records. As to the first issue, Elmore notes that the Commissioner's regulations define a claimant's "complete medical history" as the history dating either 12 months prior to the claimant's application or 12 months prior to the alleged disability onset. (*Id.* at 10) (citing 20 C.F.R. § 404.1512(b)(ii)). True enough, but evidence from before a claimant's onset date can be relevant when it is probative of the plaintiff's limitations during the relevant time period. *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012). Dr. Scott's records concern the January 20, 2021, surgery from which Elmore claims he was unable to recover and the immediate aftermath of that surgery. At a minimum, that is probative of the injury giving rise to Elmore's claim. Additionally, and particularly as to Dr. Scott's inability to opine on Elmore's cervical pain, the ALJ did not rely on or adopt Dr. Scott's recommendation that Elmore return to full duty with no restrictions; instead, the RFC contains significant restrictions. The ALJ's discussion of Dr. Scott's records was not erroneous.

As for the records postdating Elmore's alleged onset date, Elmore acknowledges that the ALJ "briefly" addressed the records from Curewell Medical Center. (Doc. 15 at 10–11). Elmore points to various diagnoses by Dr. Chandra that the ALJ did not specifically acknowledge: cervical disc disorder, cervicalgia, and pain in the right shoulder. (Doc. 15 at 11) (citing Tr. 681). However, none of these diagnoses by themselves contradict the ALJ's assessment of relatively normal findings on examination or point to any specific work-related limitation supported by Elmore's testimony. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (noting that

"the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work"); *Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011). And while Elmore contends that the ALJ's analysis lacked specificity because the ALJ characterized the records as "[e]ssentially all . . . unremarkable" (doc. 15 at 11), Elmore points to nothing in those records that is inconsistent with this characterization. This is particularly problematic for Elmore's argument because the ALJ also relied on Dr. Aryanpure's consultative examination, which postdates Elmore's onset date and which Elmore does not appear to acknowledge in his brief (*see generally* doc. 15). That examination also featured relatively unremarkable findings, directly inconsistent with Elmore's allegations of disabling limitations. Even leaving the other evidence Elmore challenges aside, Dr. Aryanpure's examination provided substantial evidence to reject the degree of limitation Elmore described in his testimony.

The ALJ's rejection of Elmore's pain testimony was supported by substantial evidence. Accordingly, remand is unwarranted as to Elmore's first argument.

**B. The ALJ Did Not Err in Analyzing Medical Source Opinions**

For claims filed on or after March 27, 2017, such as this case, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions," 20 C.F.R. § 404.1520c(b), taking into account five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including, but not limited to,

evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). In articulating an opinion's persuasiveness, the ALJ must explain how he or she considered the factors of supportability and consistency—the most important factors—and may (but is not required to) explain how he or she considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Elmore's allegation of error in the ALJ's analysis of medical source opinion comes in two parts. First, Elmore contends that the ALJ's erred in determining that the opinions of Dr. Chandra and CRNP Bundrum were inconsistent with other evidence in the record because the ALJ failed to point to any genuine inconsistency. (Doc. 15 at 11–13). Second, Elmore argues that the regulations cited above are no longer applicable because of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo, Secretary of Commerce*, 603 U.S. 369 (2024), which he argues effectively restored the "treating physician rule" that prevailed in the Eleventh Circuit prior to the 2017 adoption of those regulations. (Doc. 15 at 13–16). Because it potentially impacts the standard used to assess Elmore's underlying argument, the undersigned takes the *Loper Bright* argument first.[6]

[6] In his reply, Elmore states that "this Court need not reach the Plaintiff's arguments regarding the viability of the 'treating physician rule' in light of" *Loper Bright*, arguing that the ALJ's decision fails under the 2017 regulations. (Doc. 17 at 2–3). That said, Elmore preserves the argument "if the Court should determine that Plaintiff's other arguments fail . . . ." (*Id.* at 3). Because the undersigned finds that Elmore's other arguments do not support remand, the *Loper Bright* argument is discussed below.

**1. *Loper Bright* Did Not Abrogate Eleventh Circuit Precedent Upholding the 2017 Regulations**

The undersigned discussed substantially the same argument Elmore raises in this case in *Rigsbee v. Comm'r of Soc. Sec. Admin*:

> Rigsbee contends that 20 C.F.R. § 404.1520c(a), which states that ALJ's are not required to give any deference towards a claimant's treating physician, is an impermissible interpretation of 42 U.S.C. § 423(d)(5)(B), a provision of the Social Security Act discussing treating physicians. (Doc. 13 at 38–50). That statute provides:
>
>> In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.
>
> 42 U.S.C. § 423(d)(5)(B). Rigsbee argues that the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo, Secretary of Commerce*, 603 U.S. 369 (2024) requires the court to determine whether 20 C.F.R. § 404.1520c(a) is a correct interpretation of 42 U.S.C. § 423(d)(5)(B). Under Rigsbee's view, the statute's specific reference to obtaining evidence from the "treating physician" requires any regulatory interpretation to afford more weight to the treating physician's opinion. (Doc. 13 at 40–41). Since the 2017 regulations eliminate deference to treating physicians, Rigsbee argues that they cannot survive the court's analysis.
>
> In *Loper Bright*, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Chevron* required courts to defer to reasonable agency interpretations of ambiguous statutes. *Loper Bright*, 603 U.S. at 379. Under the rule announced in *Loper Bright*, courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority . . . ." *Id.* at 412.
>
> Although Rigsbee spills a great deal of ink on his *Loper Bright* argument, this district court is bound by the Eleventh Circuit's decision in *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). In *Harner*, the Eleventh Circuit

> upheld the 2017 regulations as a valid exercise of regulatory power, within the scope of the Commissioner's delegated authority. *Id.* Rigsbee notes that the Eleventh Circuit did so by using *Chevron* deference (doc. 13 at 39), but the *Loper Bright* court explicitly stated that it did not "call into question prior cases that were decided by the *Chevron* framework," 603 U.S. at 412. Thus, *Loper Bright* did not abrogate *Harner. See Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1223 (11th Cir. 2022) (noting that to abrogate an otherwise binding case to the extent that a court need not follow it, a decision of the Supreme Court must "demolish and eviscerate each of its fundamental props") (cleaned up). Since *Harner* remains binding law, Rigsbee's argument is beside the point. *See Childress v. King*, No. 4:21-CV-237-CLS, 2025 WL 540092, at *5 (N.D. Ala. Feb. 18, 2025) (declining to conduct a *Loper Bright* analysis in light of *Harner*).

*Rigsbee v. Comm'r of Soc. Sec. Admin.*, No. 1:24-CV-0644-JHE, 2025 WL 2810011, at *3–4 (N.D. Ala. Sept. 30, 2025). In a footnote, the undersigned further stated:

> The undersigned doubts that Rigsbee's argument is otherwise availing. Section 423(d)(5)(B) provides no direction as to how evidence should be weighed. The statute's reference to treating physicians perhaps indicates that it is important to review evidence from treating physicians, but it says nothing about whether the agency must defer to their opinions. This is consistent with *Harner*, even on reassessment in light of *Loper Bright. See Thomas v. Comm'r of Soc. Sec.*, No. 3:23-cv-1243, 2024 WL 4764465, at *3 n.9 (M.D. Fla. Nov. 13, 2024) (observing that *Harner* relied in part on the *Chevron* doctrine, but also that *Harner* "held that nothing in the Act specifies how treating-physician evidence is to be weighed or requires the treating-physician rule, which means the new regulations remain good law even with *Chevron* overruled").

*Rigsbee*, 2025 WL 2810011, at *4 n.4.

Nothing appreciable has changed between the undersigned's decision in *Rigsbee* and today. *Harner* is still binding on this district court until the Eleventh Circuit says otherwise.[7] Accordingly, the undersigned applies the 2017 regulations below.

---

[7] Elmore notes that *Rigsbee* is currently on appeal, placing *Harner's* viability before the Eleventh Circuit. (Doc. 17 at 3). As of the date of this memorandum opinion, the Eleventh Circuit has not decided that appeal.

**2. The ALJ Properly Evaluated the Opinion Evidence**

Both Dr. Chandra and CRNP Bundrum provided medical source statements. CRNP Bundrum opined that Elmore had various limitations stemming from his shoulder pain, amounting to what the ALJ characterized as "a range of light work with very limited manipulative and postural movements." (Tr. 18, 783–84).[8] Dr. Chandra opined that Elmore would miss five days or more of work in a month due to his conditions. (Tr. 18, 785). The ALJ found that both opinions were "supported by examination, but not consistent with the evidence at the hearing level." (Tr. 18). Therefore, he found them "not persuasive as they are contradicted not only by the FCE, but the consultant examiner and their own records." (Tr. 18).

Elmore states that "apart from recounting again the findings of the FCEs from a year before Mr. Elmore's claimed disability, the ALJ identified no specific evidence that contradicted Dr. Chandra and nurse practitioner Clements' opinions." (Doc. 15 at 12–13). This is not the case. Even leaving aside the ALJ's reliance on the FCEs, the ALJ explicitly pointed to Dr. Aryanpure's consultative examination. (Tr. 18). That examination postdated Elmore's claimed disability date and was genuinely inconsistent with the disabling limitations identified by both providers.[9] This is not a situation where the ALJ failed to explain, and the record does not reveal, how a provider's "findings are genuinely inconsistent" with other record evidence, *see Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021), or where the claimed contradictory evidence consists of "positive or neutral observations that create, at most, a trivial and indirect tension with the

---

[8] The ALJ misidentified CRNP Bundrum as "Ms. Clemons" (tr. 18), but his description is otherwise consistent with CRNP Bundrum's opinion.

[9] Dr. Aryanpure's examination was also largely consistent with the nondisabling findings in the FCEs, bolstering their probative value regardless of the fact that they predated Elmore's alleged onset date.

treating physician's opinion," *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1263 (11th Cir. 2019). Rather, the conflicts are clear: Dr. Aryanpure's examination supports a range of motion substantially greater than what CRNP Bundrum's opinion supports, and Dr. Aryanpure's benign findings are inconsistent with the disabling pain that Dr. Chandra opined would make Elmore miss five or more days of work in a month.

Substantial record evidence contradicts the opinions of Dr. Chandra and CRNP Bundrum. Accordingly, the ALJ did not err in rejecting those opinions, and remand is unwarranted on that basis.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Elmore's claim for a period of disability and DIB is **AFFIRMED**. A separate order will be entered.

DONE this 14th day of September, 2026.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE